Ernest Lee Walker, Jr., appeals the trial court's revocation of his probation.
Initially, we note that the record in this case is sparse; it contains little information regarding Walker's convictions or the revocation of his probation. In addition, although a transcript of the revocation hearing is contained in the record, that transcript is oftentimes confusing. For this reason, we set out everything we have ascertained from the record in as much detail as possible.
On May 8, 2003, Walker pleaded guilty to two counts of assault in the third degree. He was sentenced to serve 12 months in the county jail, but the sentence was suspended and Walker was placed on probation. There is no indication in the record as to the length of Walker's probationary sentence, but Walker claims in his brief on appeal that he was placed on two years' probation. The case action summary for the probation revocation states that something, presumably a delinquency report or a motion to revoke Walker's probation, was "filed" on September 2, 2004. (C. 1.) However, the record does not contain a delinquency report or a motion to revoke. In addition, the record indicates that Walker was arrested on the alleged probation violations before September 2, 2004. The record contains a preprinted form entitled "Inmate Request Form" from the Montgomery County Detention Facility that was filed by Walker on August 12, 2004. (C. 22.) That form contains the case number of the present case, CC-02-154, and in it Walker claimed that he was being held in the Montgomery County Detention Facility on a "probation hold" and he requested a "speedy trial or court date." (C. 22.)
The revocation hearing was conducted on September 21, 2004. During that hearing, Walker's counsel specifically referred to two probation-violation charges against Walker: violating a municipal law and failing to maintain a full-time job. Walker denied the first charge on the ground that the case had been dismissed and that charge was then withdrawn. Walker admitted the second charge, and he attempted to explain his failure to maintain a full-time job.[1] The trial court indicated that it did not believe Walker's explanation for failing to maintain a full-time job and then questioned Walker about three other conditions of his probation: the payment of his fines; his scheduled visits with the Department of Human Resources ("DHR"); and his completion of the "Evening program."[2] (R. 9.) Because there is no delinquency report or motion to revoke in the record, we do not know whether Walker was ever actually charged with violating these conditions of his probation.[3] *Page 594 
Regarding payment of fines, the following exchange occurred at the hearing:
 "THE COURT: All right. Now, just tell me what moneys have you paid while you were working?
"[Walker]: I paid off all my fines. I paid as of —
 "THE COURT: You got put on probation back in May of '03, so —
"[Walker]: Yes, sir.
"THE COURT: — what moneys had you paid?
 "[Walker]: I paid all my fines off, and I paid up until July, July the 6th. I owe $30.
"THE COURT: What fine you had? [sic]
"[Walker]: $318. I owe a zero balance.
 "THE COURT: Is that right, Mr. Bryant [Walker's probation officer]? He's paid all his moneys?
"MR. BRYANT: Yes, sir."
(R. 6.) Despite the probation officer's indication that Walker had paid all of the moneys he owed, later during the hearing, Walker's counsel requested that the trial court not revoke Walker's probation to allow Walker "time to catch up on the supervision fees." (R. 10.)
After this exchange regarding Walker's payment of his moneys, the trial court questioned Walker about whether he had kept all of his scheduled visits with DHR. Walker admitted he had not, but claimed that he was unable to do so because he kept getting fired from his jobs for going to DHR during working hours. The trial court then questioned Walker about whether he had completed the "Evening program" (R. 9) (see note 2, supra), and Walker admitted that he had not completed that program.
At the conclusion of the hearing, the trial court then stated that it was going to revoke Walker's probation and to order him to serve his 12-month sentence in the county jail. After the trial court indicated that it was revoking Walker's probation, the following exchange occurred:
 "[Walker's counsel]: Your Honor, we would, of course, ask that he receive credit for time served.
"THE COURT: No credit for time served.
 "[Walker's counsel]: We would ask the Court to give him credit at $15 per day since —
"THE COURT: No credit for anything.
"[Walker's counsel]: Toward his court-ordered costs.
 "THE COURT: Well, these have not been committed to — no fines have been committed today [sic], so that doesn't apply."
(R. 11-12.) After the hearing, the trial court made the following notation on the case action summary: "Def[endant's] probation revoked. Impose 12[-month] sentence." (C. 1.)
 I.
Walker contends that the trial court erred in revoking his probation because, he says, he did not receive written notice of the probation violations as required by Rule 27.5(a)(1), Ala.R.Crim.P.
The general rules of preservation apply to probation-revocation proceedings, and this Court has recognized only three *Page 595 
exceptions to those general rules: (1) the requirement that a revocation hearing be held, (2) the requirement that there be an adequate written revocation order, and (3) the requirement that the probationer be informed of his right to request counsel. See, e.g., Jackson v. State, 867 So.2d 365 (Ala.Crim.App. 2003), andEvans v. State, 794 So.2d 1234 (Ala.Crim.App. 2000). Walker's claim does not fall within one of these exceptions. Therefore, because Walker did not present this claim to the trial court, it is not properly before this Court for review.
 II.
Walker contends that the trial court erred in not giving him $15 credit toward his fines and/or costs for every day he spent incarcerated, pursuant to Rule 26.11(i), Ala.R.Crim.P.
As noted above, Walker requested at the revocation hearing that he be credited with $15 per day, and the trial court denied that request. In denying the request, however, the trial court specifically stated: "Well, these have not been committed to — no fines have been committed today [sic], so that doesn't apply." (R. 11-12.) Although, as noted in Part IV of this opinion the trial court did not issue an adequate written revocation order setting forth the reasons for revoking Walker's probation, the clear import of the trial court's statement in response to Walker's request for monetary credit was that the trial court was not revoking Walker's probation for his failure to pay his court-ordered moneys. Moreover, although by no means clear, the exchange during the revocation hearing between the trial court, Walker, and Walker's probation officer regarding Walker's payment of fines, as quoted above, suggests that Walker may have paid all of his court-ordered moneys in full and, thus, that Walker's probation could not have been revoked on that ground. Because the record indicates that the trial court did not revoke Walker's probation because of his failure to pay court-ordered moneys, it properly denied Walker's request to be credited with $15 per day pursuant to Rule 26.11(i), Ala.R.Crim.P.
 III.
Walker also contends that the trial court erred in denying his request for credit for time he spent in custody before his probation was revoked. We agree.
Section 15-22-54(d)(3), Ala. Code 1975, provides, in pertinent part, that "[i]f revocation results in a sentence of confinement, credit shall be given for all time spent in custody prior to revocation." Credit for time served upon revocation is mandatory. See, e.g., Mumpfield v. State, 872 So.2d 205 (Ala.Crim.App. 2003), and Ware v. State, 842 So.2d 38 (Ala.Crim.App. 2002).
We recognize, as the State argues, that it is the appellant's duty to provide this Court with a complete record on appeal; however, we cannot agree with the State that the record in this case, however sparse it is, is silent as to whether Walker's incarceration before the revocation hearing was for violating his probation or for another crime. Although the record indicates that one of the probation violations Walker was charged with was violating municipal law, thus indicating that Walker may have been arrested and incarcerated for another crime, in his August 12, 2004, request for a "speedy trial or court date" for the probation violation, Walker specifically stated that he was incarcerated at that time for a "probation hold." (C. 22.) In addition, at the hearing, Walker's counsel, when addressing whether Walker had violated municipal law, stated that the municipal charge had already been dismissed. Although the record does not indicate when Walker was *Page 596 
arrested on the municipal charge, when that charge was dismissed, or when Walker was arrested for the probation violations, it appears from the record that Walker was incarcerated for a period of time before the revocation hearing and that at least a portion of that incarceration was for the probation violations.
Pursuant to § 15-22-54(d)(3), Ala. Code 1975, Walker was entitled to have his sentence credited with all time he spent incarcerated for the probation violations before the revocation hearing. Therefore, we must remand this case for the trial court to give Walker the appropriate credit.
 IV.
Finally, Walker contends that the trial court's order revoking his probation was inadequate because, he says, the court failed to state its reasons for revoking his probation and the evidence it relied on in doing so. We agree.
Although Walker did not object to the trial court's written revocation order, as noted above, it is well settled that "the adequacy of a written order of revocation can be raised for the first time on appeal." Durr v. State, 807 So.2d 595, 595
(Ala.Crim.App. 2001), citing Owens v. State, 728 So.2d 673, 680
(Ala.Crim.App. 1998).
 "`In accordance with Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975), and Wyatt v. State, 608 So.2d 762 (Ala. 1992), before probation can be revoked, an Alabama trial court must provide a written order stating the evidence and the reasons relied upon to revoke probation.' Trice v. State, 707 So.2d 294, 295 (Ala.Crim.App. 1997). `These requirements offer the probationer some protection from an abuse of discretion by the trial court, aid an appellate court in reviewing a revocation, and prevent future revocations based on the same conduct.' T.H.B. v. State, 649 So.2d 1323, 1324 (Ala.Cr.App. 1994)."
Chenault v. State, 777 So.2d 314, 316-17 (Ala.Crim.App. 2000). Here, the trial court's order consisted only of a notation on the case action summary sheet that "[d]ef[endant's] probation revoked." (C. 1.) This Court held in Durr that the trial court's notation on the case action summary sheet that "probation is revoked" was not sufficient to satisfy the requirements of due process. Durr, 807 So.2d at 595.
Therefore, based on Armstrong v. State, 294 Ala. 100,312 So.2d 620 (1975), and Wyatt v. State, 608 So.2d 762 (Ala. 1992), we must remand this cause for the trial court to prepare a written statement of the reasons for revoking Walker's probation and the evidence it relied upon in doing so.
 V.
For the reasons stated in Parts III and IV of this opinion, we remand this case for the trial court to (1) credit Walker with any time he spent incarcerated for the probation violations before his revocation hearing in accordance with §15-22-54(d)(3), Ala. Code 1975, and (2) to issue a written revocation order setting forth the reasons for revoking Walker's probation and the evidence it relied upon in doing so. Due return shall be filed within 35 days of the release of this opinion.
REMANDED WITH DIRECTIONS.* *Page 597 
McMILLAN, P.J., and COBB and WISE, JJ., concur.
BASCHAB, J., concurs in the result.
[1] Walker claimed that he had been fired from his full-time job because he had been injured on the job and because of "racial stuff." (R. 4.)
[2] In his brief, Walker refers to this as the "EVEN program." (Walker's brief at pp. 2, 11, and 12.) There is no indication in the record as to what this program is.
[3] In his brief to this Court, Walker claims that, in addition to the two charges specifically referred to by his counsel at the hearing, he was also charged with failing to pay his fines and/or costs and with changing his residence without the consent of his probation officer, We can find no mention in the record of Walker's changing residences without the consent of his probation officer and, as noted, because the record does not contain a delinquency report or a motion to revoke, we do not know whether Walker was actually charged with not paying his fines.
* Note from the reporter of decisions: On July 29, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion.