WISE, Presiding Judge.
 

 On August 15, 2006, the appellant, Michael Killeen, entered a guilty plea to first-degree robbery. The trial court sentenced him to serve a term of twenty years in prison, but split the sentence and ordered him to serve three years followed by four years on supervised probation. On August 29, 2008, the State initiated revocation proceedings. After conducting a hearing, the circuit court revoked Killeen’s probation. This appeal followed.
 

 Killeen argues that the circuit court erroneously revoked his probation based solely on hearsay.
 

 “ ‘The use of such hearsay evidence as the sole means of proving the violation of the probation condition denied appellant the right to confront and cross-examine the person who originated the factual information which formed the basis for the revocation. For this reason, appellant was denied minimal due process of law, and the evidence was insufficient to prove the alleged violation of probation.’
 

 “[Mallette v. State,]
 
 572 So.2d [1316,] 1317 [ (Ala.Crim.App.1990) ]. See also
 
 Ex parte Belcher,
 
 556 So.2d 366 (Ala.1989) (State’s evidence held insufficient in probation revocation hearing where evidence consisted of probation officer’s testimony that, while on probation, the appellant was charged with a federal offense, i.e., conspiring to possess, with intent to distribute, approximately 1000 pounds of marijuana, and certified copies of the federal charge).
 

 “ ‘[T]he law is clear that the formality and evidentiary standards of a criminal trial are not required in parole revocation hearings.
 
 Thompson v. State,
 
 356 So.2d 757 (Ala.Crim.App.1978),
 
 Armstrong v. State,
 
 294 Ala. 100, 312 So.2d 620 (1975). Hearsay evidence may be admitted in the discretion of the court, though the State acknowledges that hearsay evidence cannot be the sole support of revoking probation.
 
 Mitchell v. State,
 
 462 So.2d 740 (Ala.Crim.App.1984).
 

 [[Image here]]
 

 “‘Although probation is a “privilege” and not a right,
 
 Wray v. State,
 
 472 So.2d 1119 (Ala.1985), certain standards of due process of law must be met to justify revocation. Those standards are set out in
 
 Armstrong v. State,
 
 supra.
 

 “ ‘... While we recognize that all the formal requirements of a criminal trial are not mandated, and that the burden of proof is different,
 
 Thompson v. State,
 
 356 So.2d 757 (Ala.Cr.App.1978) (“[t]he standard of proof is not reasonable doubt or preponderance of the evidence, but reasonable satisfaction from the evidence”), we also recognize that “[h]earsay information may not be used to furnish the
 
 sole
 
 basis of the revocation.”
 
 Watkins v. State,
 
 455 So.2d 160 (Ala.Cr.App.1984). See, also,
 
 Moore v. State,
 
 432 So.2d 552 (Ala.Cr.App.1983). In the ease at bar, we find that the evidence in the record was insufficient. Although evidence sufficient to support a conviction is not required, a probation officer’s report and/or an arrest warrant, standing alone or together, would be insufficient.’
 

 “Ex parte Belcher,
 
 supra, at 368-69 (emphasis in original).”
 

 Hall v. State,
 
 681 So.2d 247, 248 (Ala.Crim.App.1995).
 

 
 *825
 
 “This court has consistently held that ‘[w]hile hearsay evidence is admissible in a revocation proceeding it may not serve as the sole basis of the revocation.’
 
 See Beckham v. State,
 
 872 So.2d 208, 211 (Ala.Crim.App.2003);
 
 see also Brazery v. State,
 
 6 So.3d 559 (Ala.Crim.App.2008) (‘ “It is well settled that hearsay evidence may not form the sole basis for revoking an individual’s probation.’”);
 
 Goodgain v. State,
 
 755 So.2d 591, 592 (Ala.Crim.App.1999) (same);
 
 Clayton v. State,
 
 669 So.2d 220, 222 (Ala.Crim.App.1995) (same);
 
 see also Ratliff v. State,
 
 970 So.2d 939, 941-42 (Fla.App. 4 Dist. 2008) (quoting
 
 Johnson v. State,
 
 962 So.2d 394, 396-97 (Fla. 2d DCA 2007)) (‘While probation may be revoked based on a combination of hearsay and non-hearsay evidence, when the State seeks to revoke probation based on the commission of new offenses, it must present direct, nonhearsay evidence linking the defendant to the commission of the offense at issue.’ Here, the trial court abused its discretion by revoking the appellant’s probation because the State failed to present ‘non-hearsay evidence establishing the essential elements of the criminal offenses at issue .... ’).”
 

 Sams v. State,
 
 [Ms. CR-08-0884, June 26, 2009] - So.3d -, - (Ala.Crim.App.2009). Finally,
 

 “ ‘ “ ‘[t]he decision to revoke probation is a judicial function and should be based upon the appellant’s conduct and not upon an accusation only. The state must submit enough substantive evidence to reasonably satisfy the trier of the facts that a condition of probation was breached.’
 
 Hill[ v. State,
 
 350 So.2d 716 (Ala.Cr.App.1977) ].” ’
 

 “Chasteen v. State,
 
 652 So.2d 319, 320 (Ala.Crim.App.1994) (quoting
 
 Mitchell v. State,
 
 462 So.2d 740, 742 (Ala.Crim.App.1984)).”
 

 Nash v. State,
 
 931 So.2d 785, 789 (Ala.Crim.App.2005).
 

 In this case, the circuit court revoked Killeen’s probation on the ground that he had committed the new offense of first-degree robbery. During the revocation hearing, Detective Chris Mason of the Enterprise Police Department testified that he investigated a robbery at the Hobo Pantry convenience store on Rucker Boulevard; that, on August 10, 2008, a white male entered the store with a gun and demanded that the clerk give him all of the money; that the clerk opened the cash register and gave the man the entire cash drawer; and that the man left on foot. He also testified that Shane Godbey was the person who actually entered the store with the weapon; that Killeen did not enter the business; that they received information that Killeen was in the getaway vehicle with a female named Tobi Dekker; and that Dekker and Godbey both placed Kil-leen at the scene of the crime. Mason further testified that he was told that Kil-leen, Godbey, and Dekker were going to rob the store; that Killeen told Godbey what to say, gave him a gun to use, told him what to do inside the store, and told him to meet them when they got down the road; and that, after the robbery, Godbey got into the vehicle in which Killeen was riding. Finally, he testified that Killeen and Dekker had dated for years and that he believed they also had a child together.
 

 Detective Chris Hurley of the Enterprise Police Department testified that he responded to an armed robbery that occurred at a Stop & Go convenience store on Rucker Boulevard; that a white male wearing a black t-shirt and blue jeans and with a bandana across his face entered the store with a small caliber handgun, robbed the clerk at gunpoint, and fled on foot
 
 *826
 
 behind the store; and that he received that information from the cashier, Mina Patel. He also testified that he received information that Shane Hutto, who was possibly identified as Shane Godbey, and Killeen were responsible for the robbery at Stop & Go and another robbery at Video Warehouse; that he interviewed Godbey and Dekker
 
 [1]
 
 ; that Dekker told him Kil-leen was present and was the “mastermind” behind the robbery; that Godbey corroborated that Killeen was the “mastermind” behind the robbery and participated in the robbery; and that Godbey told him that Killeen received most of the money from the robbery. (R. 17, 19.) Hurley further testified that they knew that two revolvers had been used during the robbery; that they contacted the Coffee County Sheriffs Department and learned that numerous revolvers had been stolen during several residential burglaries that had occurred in Coffee County around that time; and that the guns used in the robbery were confirmed as having been stolen during the residential burglaries. He also testified that Killeen and Dekker lived at 2305 Fairview Drive; that numerous items that had been stolen during the residential burglaries were found outside of the residence; that officers executed a search warrant at the residence on August 20, 2008; that Killeen was there with his child and Dekker’s other child; and that he believed that officers recovered jewelry and pocketknives from the house. He further testified that officers determined that Killeen lived at the residence based on numerous shirts, t-shirts, and pants they found; the fact that they found Killeen’s driver’s license and wallet in the master bedroom of the house; and the fact that they found a cable bill that was in Killeen’s name and was for the residence at Fair-view Avenue. Hurley testified that he interviewed Killeen; that Killeen denied any knowledge or involvement in the robbery and denied that he lived at the house; and that Killeen said that his clothing and driver’s license were in the house because he was watching his child when law enforcement officers arrived. Finally, he testified that he believed that Dekker told officers that her brother had some clothes in the residence that had been used during the robbery and that Godbey had changed her brother’s those clothes so he would not be recognized.
 

 In this case, all
 
 of the
 
 testimony regarding Killeen’s involvement in the robberies was based on hearsay statements by Dekker and Godbey. The State presented non-hearsay evidence that indicated that Killeen lived at the house at Fairview Avenue. Although there was some testimony regarding stolen property that was found at that house, that testimony did not relate to items that were connected with the robbery.
 
 [2]
 
 At the conclusion of the revocation hearing, the circuit court stated:
 

 “Under advisement. But let me tell y’all what I perceive I’m left with here today insofar as the robbery. The only thing that you’ve presented that would link him to it is the — it doesn’t matter that she’s not a co-defendant. The only thing I have in regard to an alleged robbery is the uncorroborated — the hearsay testimony concerning the uncorroborated testimony of an accomplice, which would not be competent evidence to convict of that offense.”
 

 
 *827
 
 (C.R. 28-29.) In its written revocation order, the circuit court stated that it was reasonably satisfied that Killeen had committed the new offense of first-degree robbery. It further stated,
 

 “The Court’s findings are based upon the testimony of Enterprise Police Investigators Chris Mason and Chris Hurley, the documentary evidence presented (Shane Godbey’s statement), and other matters within the case file and of which the Court takes judicial notice.”
 

 (C.R. 56.) Although the circuit court indicated that it considered “other matters within the case file” and of which it had taken judicial notice, the record does not include any non-hearsay information regarding the new offense of first-degree robbery. Therefore, the State did not present sufficient non-hearsay evidence to support the revocation of Killeen’s probation. Accordingly, we reverse the circuit court’s order revoking Killeen’s probation and remand this case to the circuit court for proceedings that are consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.
 

 [1]
 

 . Hurley identified Dekker as Tobi Dekker Jones. However, for the sake of consistency, we will refer to her as “Dekker.”
 

 [2]
 

 . Although Killeen was also charged with violating his probation by committing the new offense of first-degree receiving stolen property, the circuit court did not revoke his probation on that ground.